IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN BROWN, | ) |
|          Plaintiff, | ) |
| | ) |
|      v. | ) |
| | )   Civil Action No. 3:22-105 |
| BROOKE CIVIELLO, JOYCE | ) |
| KNOWLES, and DOCTOR BLOOM, | ) |
|          Defendants. | ) |

### MEMORANDUM OPINION[1]

Pending before the Court is the Motion to Dismiss (ECF No. 20) of Defendants Adam Bloom and Joyce Knowles (the "Moving Defendants"). For the reasons that follow, the Motion to Dismiss will be granted in part and denied in part.

**I.  Procedural History**

In this civil rights lawsuit, Plaintiff Brian Brown brings claims under the Eighth and Fourteenth Amendments of the United States Constitution against Defendants Brooke Civiello, Joyce Knowles, and Adam Bloom due to events related to his suicide attempt in SCI Houtzdale. (*See* ECF No. 12.)

Civiello answered the Amended Complaint (ECF No. 19), and Bloom and Knowles moved to the dismiss the Amended Complaint (ECF No. 20). Brown responded (ECF No. 32), and the Moving Defendants were granted leave to file a reply brief (ECF Nos. 34 & 35). The Motion to Dismiss is now fully briefed and ripe.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

## II. Factual Background

Brown alleges that on February 11, 2022 he was told that he would be moving from a special needs unit to a regular unit within SCI Houtzdale. (ECF No. 12 ¶ 1.) After being moved, he requested to speak to a psychologist because he "was afraid of [his] new surroundings, and was experiencing suicidal thoughts." (*Id*. ¶ 2.) Brown alleges that "SCI Houtzdale and the Psychology Department [are] well aware of [his] extensive mental health issues, from [his] prior placement at SCI Waymart, where [he] was housed in the 'mental health unit'… because of [his] serious suicide attempts." (*Id*. ¶ 3.) After Brown requested to speak to a psychologist, the correctional officer on duty called Civiello, who was the psychologist for the block. (*Id*. ¶ 4.) Brown went to Civiello's office and informed her that he was having thoughts of committing suicide. (*Id*. ¶ 5.) When he informed her of his suicidal thoughts "she was not taking [him] serious[ly], so [he] got up to go to [his] cell to kill [him]self." (*Id*. ¶ 6.) Civiello told him to "sit down" and then picked up the phone and called Bloom and then Knowles. (*Id*.) Brown alleges that Civiello informed both Bloom and Knowles about his suicidal thoughts. (*Id*. ¶ 7.) After hanging up the phone, Civiello said to Brown that both Bloom and Knowles had said to "just push through it." (*Id*.)

Brown then "requested to be placed in the 'psychiatric observation cell'" but was told by Civiello that Bloom and Knowles "stated that they [were not] admitting [him] to the [psychiatric observation cell] to be put on 'suicide watch.'" (*Id*. ¶ 8.) At that moment, Brown alleges that he "felt helpless and wanted to end [his] life." (*Id*. ¶ 9.) He "immediately went back to [his] cell" and "began to take over twenty five pills" of "psychotropic medication." (*Id*.) After taking the pills, he "broke open [his] razor, and began cutting [his] arms open w[h]ere [he] could see [his] veins." (*Id*.)

2

When Brown came to, he was in the Altoona Hospital where he spent five days until he was transferred back to the infirmary unit at SCI Houtzdale. (*Id*. ¶ 10.) He was then reviewed by the Psychiatric Review Team, which was comprised of Bloom, Knowles, and another individual who is not a Defendant, Sean Brenahan. (*Id*. ¶ 11.) The Psychiatric Review Team "informed [Brown] that they were not interested in sending [him] to any programs, and that [he] would serve my life sentence [t]here, and die." (*Id*.)

### III.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). When "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient

to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *See, e.g.*, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To defeat a motion to dismiss, it is sufficient to allege a prima facie case, *see Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017), but it is not necessary. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (cited with approval in *Twombly*, 550 U.S. at 569–70). The complaint need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Fowler*, 578 F.3d at 213 (quoting *Phillips*, 515 F.3d at 234).

The Supreme Court has stated that "the allegations of [a] *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

IV.     **Discussion**

    A. **The Totality of the Allegations in Brown's Amended Complaint are Sufficient to State an Eighth Amendment Claim**

The Third Circuit has articulated a vulnerability to suicide framework that "is simply a more specific application of the general rule set forth in *Estelle*." *Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). *Estelle* "requires that prison officials not be deliberately indifferent to the serious medical needs of prisoners," and a "'particular vulnerability to suicide' is just one type of 'serious medical need.'" *Id.* (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

Under this framework, a prisoner "must show: (1) that the individual had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Id.* at 223–24.

The Moving Defendants argue for dismissal based on the first element—that Brown has failed to establish that he had a particular vulnerability to suicide. (ECF No. 21.) In doing so, the Moving Defendants argue that the Court may not infer from the attempted suicide, in hindsight, that a plaintiff necessarily had a particular vulnerability to suicide and that the "prison officials were recklessly indifferent in their obligation to take reasonable precautions to protect the safety of prisoners entrusted to their care." (*Id.* at 3 (citing *Ferencz v. Medlock*, No. 11-cv-1130, 2014 WL 3339639, at *3 (W.D. Pa. July 8, 2014) (citing *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988))).)

5

The Moving Defendants argue that Brown only alleges that the "psychology department at SCI Houtzdale is 'well aware' of his 'extensive mental health issues' based on his prior housing in a mental health unit at SCI Waymart" and fails to identify facts that "exhibited a particular vulnerability to suicide at or around the time he engaged in self-harm in February 2022." (ECF No. 21 at 4–5.) Finally, the Moving Defendants argue that Brown's "mental state was not so obviously in crisis to mandate immediate intervention" based on the Defendants' response to his allegations of suicide, and thus any disagreement with his care is a question of medical judgment that does not rise to the level of a constitutional violation. (*Id.* at 5.)

Brown argues that Knowles exhibited reckless disregard for his safety, because she should have known that he was having suicidal ideations but took no preventative measures, such as contacting security or block officers to have his cell searched for contraband to keep him from attempting suicide. (ECF No. 32 at 3–5.) He further argues that Bloom exhibited gross disregard for his safety after Civiello told Bloom that Brown was having suicidal ideation but took no measures to prevent him from hurting himself. (*Id.* at 5.)

"A particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." *Palakovic*, 854 F.3d at 230. The cumulative facts alleged in the Amended Complaint—Brown's mental health history and placement in the mental health unit at the prior facility SCI Haymart due to prior suicide attempts; SCI Houtzdale psychology department's alleged knowledge of such history; Brown's placement on the special needs unit SCI Houtzdale; the fact that Ms. Civillo (the psychologist on call) telephoned two doctors when Brown informed her of his suicidal thoughts; Brown's request for a psychiatric observation cell;

and Brown's attempted suicide after the interaction[2]—are sufficient at this stage in the litigation to support a reasonable inference that Brown had particular vulnerability to suicide.

Thus, the Moving Defendants' Motion to Dismiss Brown's Eighth Amendment claim will be denied.

### B. Brown's Fourteenth Amendment Claim Will Be Dismissed with Prejudice

The Moving Defendants argue that Brown's Fourteenth Amendment Claim must be dismissed because it is duplicative of his Eighth Amendment claim. (ECF No. 21 at 6.) Brown does not address this argument. (ECF No. 32.)

The Supreme Court of the United States has made clear that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, the Moving Defendants correctly note that, because Brown is a convicted and sentenced state prisoner, *see* ECF No. 12 at 4, the Eighth Amendment provides the explicit source of constitutional protection for his claim of deliberate indifference to his particular vulnerability to suicide against the Moving Defendants.

---

[2] Based on the Amended Complaint, Brown attempted suicide immediately when he returned to his cell after his interaction with Civiello and her phone call to the Moving Defendants. This short temporal proximity is in stark contrast to the cases cited by the Moving Defendants in favor of dismissal. (*See* ECF No. 21 at 4–5.) For example, in *Hinton v. United States*, the United States District Court for the Middle District of Pennsylvania found that a plaintiff had failed to allege a particular vulnerability to suicide when the decedent had attempted to kill himself three times over the period of his 11-year incarceration. *Hinton v. United States*, No. 4:14-cv-0854, 2015 WL 737584, at *5–6 (M.D. Pa. Feb. 20, 2015). The other case cited by the Moving Defendants is a summary judgment case in which the United States Court of Appeals for the Third Circuit found that "suicidal ideations 18 days earlier [did] not support a strong likelihood of suicide . . . so obvious that a lay person would easily recognize it." *Baez v. Lancaster Cnty.*, 487 F. App'x 30, 31 (3d Cir. 2012) (internal citations and quotations omitted).

Thus, the Moving Defendants' Motion to Dismiss Brown's Fourteenth Amendment claim will be granted, and Brown's Fourteenth Amendment claim will be dismissed with prejudice because any amendment would be futile. *Phillips*, 515 F.3d at 236.

### C. Brown's Americans with Disabilities Act Claim Will Be Dismissed with Prejudice

In his response to the Moving Defendants' Motion to Dismiss, Brown asserts in one sentence that "[e]ach defendant violated the Americans with [D]isability Act in this case." (ECF No. 32 ¶ 10 (citing *U.S. v. Georgia*, 546 U.S. 151 (2006)).) His Amended Complaint[3] does not mention the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (ECF No. 12.)

The Moving Defendants argue that Brown has improperly amended his claim through his response in opposition to the pending motion to dismiss. (ECF No. 35.) The Court agrees. "[E]ven a pro se plaintiff, may not amend his complaint except by means of filing an amended complaint." *Noble v. Wetzel*, No. 18-cv-1160, 2019 WL 4279975, at *1 n.1 (W.D. Pa. Aug. 1, 2019), *report and recommendation adopted by*, 2019 WL 4279016 (W.D. Pa. Sept. 10, 2019) (citing *Grayson v. Mayview State Hospital*, 293 F.3d 103, 109 n. 9 (3d Cir. 2002) ("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a

---

[3] The original complaint that Brown filed was lodged pending disposition of his motion to proceed in forma pauperis. (ECF No. 1-1.) This complaint named additional defendants and had a claim for violation of the ADA and Rehabilitation Act, 29 U.S.C. § 701 *et seq*. (ECF No. 1-1 at 56– 60). However, before the Court granted the motion to proceed in forma pauperis, Brown submitted an amended complaint, which removed certain defendants and did not include claims under the ADA or Rehabilitation Act. (*See* ECF No. 10.) This Amended Complaint was docketed after the Court granted Brown's motion to proceed in forma pauperis and is the operative complaint in this case. (ECF Nos. 11 & 12). Because an amended complaint "supersedes the original and renders it of no legal effect," *West Run Student Hous. Assocs., LLC v. Huntington Natl. Bank*, 712 F.3d 165, 171 (3d Cir. 2013), there is no currently pending ADA (or Rehabilitation Act) claim.

Further, any such claim under the ADA against the Moving Defendants would be futile, because "individuals are not liable under Title II [of the ADA] because it prohibits discrimination in programs of a 'public entity' or discrimination 'by any such entity,'" which does not include individuals. *Yeskey v. Pa. Dep't of Corr.*, 76 F. Supp. 2d 572, 575 (M.D. Pa. 1999); *see also Dukes v. Mohl*, No. 1:20-vb-00315, 2022 WL 1667746, at *5 nn. 57–60 (M.D. Pa. May 25, 2022) (noting that "[a]lthough the United States Court of Appeals for the Third Circuit has not directly answered the question of whether there can be individual liability under Title II of the ADA, nearly all its decisions regarding personal liability under the ADA's various titles point toward the absence of individual liability.") (collecting cases)).

complaint through any document short of an amended pleading.") and *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").)

Thus, any attempt by Brown to set forth an ADA claim through his response in opposition is denied and any ADA claim against the Moving Defendants is dismissed with prejudice.

**V.  Conclusion**

For these reasons, the Court will grant in part and deny in part the Motion to Dismiss (ECF No. 20).

An appropriate Order follows.

BY THE COURT:

Dated: March 9, 2023                              /s/ Patricia L. Dodge
                                                  PATRICIA L. DODGE
                                                  UNITED STATES MAGISTRATE JUDGE